IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

CHANDLER HENN                              )
                                           )
v.                                         ) NO. 3:05-0132
                                           ) JUDGE CAMPBELL
HENDERSONVILLE UTILITIES                   )
    DISTRICT, et al.                       )

MEMORANDUM

Pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 16). For the reasons stated herein, Defendants' Motion is GRANTED, and this action is DISMISSED.

FACTS

Plaintiff Chandler Henn is a former employee of Defendant Hendersonville Utility District, the public water system for the city of Hendersonville, Tennessee. Defendant Atchley was General Manager of the Utility District when Plaintiff worked there and is sued in his individual and official capacities. The other individual Defendants (Boyers, Koen and Hurt) are sued solely in their official capacities.

Plaintiff began work for Defendant in 1997. By June of 2004, Plaintiff was Defendant's second highest ranked Water Treatment Plant Operator ("WTPO").

Plaintiff alleges that, on June 15, 2004, Defendants informed him that he was being given a random drug test by urinalysis. Plaintiff contends he was later informed that there was a problem with his drug test. Plaintiff claims that he requested to take a second drug test, but his supervisor, Defendant Atchley, refused to allow a second test. Plaintiff asserts that Defendant Atchley informed

Plaintiff that he could either quit his job "for personal reasons" or be fired for failing the drug screen. Plaintiff resigned his position.

Plaintiff alleges that Defendants violated his Fourth Amendment rights through an unreasonable search; deprived him of his job without due process of law; and violated their employment contract with Plaintiff.[1]

Defendants assert that the Utility District relies on its WTPOs to perform in accordance with a host of federal and state regulations in order to make the water safe for human consumption. Defendants claim that Plaintiff's responsibility, often carried out alone and unsupervised during a twelve-hour shift, was to test untreated water and to add precise amounts of chemicals to the water to make it safe. Defendants contend that Plaintiff's job was safety-sensitive, involving the risk of significant harm to individuals, businesses, public health in general and the environment. Plaintiff, on the other hand, argues that there was no safety component to his job, citing numerous safeguards within the system.

Defendants have moved for summary judgment, asserting that (1) the random drug test did not violate the Fourth Amendment because it was reasonable; (2) Plaintiff was not entitled to procedural due process under the Fourteenth Amendment because he had no property interest in continued employment with the Utility District; (3) Plaintiff had no employment contract with Defendant; (4) Defendants did not act negligently; and (5) Plaintiff did not suffer severe emotional distress. Defendants also contend that Defendants Boyers, Koen and Hurt should be dismissed

---

[1] Plaintiff has conceded that his claims for negligence, negligent infliction of emotional distress, and defamation should be dismissed.

because they are sued solely in their official capacities and that Defendant Atchley is entitled to qualified immunity.

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

## OFFICIAL CAPACITIES

Because a suit against an individual in his official capacity is the equivalent of suit against the governmental entity, Matthew v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994), Plaintiff's claims against Defendants Boyers, Koen and Hurt, Defendants sued solely in their official capacities, are DISMISSED. In addition, Plaintiff's claims against Defendant Atchley in his official capacity are DISMISSED.

3

# FOURTH AMENDMENT

The Fourth Amendment does not proscribe all searches, but only those that are unreasonable. Knox County Educ. Ass'n. v. Knox County Bd. of Educ., 158 F.3d 361, 371 (6th Cir. 1998). Government-ordered collection and testing of urine samples effects a "search" within the meaning of the Fourth Amendment as such tests intrude upon reasonable expectations of privacy. Id.; International Union v. Winters, 385 F.3d 1003, 1007 (6th Cir. 2004). As such, the searches must be reviewed for reasonableness. Id.

In the criminal context, reasonableness usually requires a showing of probable cause. Id. In the civil context, however, the Supreme Court has recognized that a search unsupported by individualized suspicion may nonetheless be reasonable when the government alleges "special needs" beyond the normal need for law enforcement — special needs that are both substantial (important enough to override the individual's privacy interest) and sufficiently vital to suppress the normal requirements of individualized suspicion. Id. In such cases, the Court has directed lower courts to balance the extent of the intrusion upon the privacy interest of the individuals being searched (tested) against the promotion of the government's proffered special need in conducting the searches (tests). Id. When such special needs are alleged in justification of a Fourth Amendment intrusion, courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties. Knox County, 158 F.3d at 373.

In Skinner v. Railway Labor Executives' Ass'n., 109 S.Ct. 1402 (1989), the Court held that the government's interest in regulating railroad employees engaged in safety-sensitive tasks presented "special needs" sufficient to justify departure from the requirements of probable cause and individualized suspicion. Id. at 1417.

4

> The Government's interest in regulating the conduct of railroad employees to ensure safety, like its supervision of probationers or regulated industries, or its operation of a government office, school or prison, "likewise presents `special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements."

Id. at 1415 (quoting Griffin v. Wisconsin, 107 S.Ct. 3164, 3168 (1987)). The Court held that "the expectations of privacy of covered employees are diminished by reason of their participation in an industry that is regulated pervasively to ensure safety, a goal dependent, in substantial part, on the health and fitness of covered employees." Id. at 1418.

Under Skinner, the test for whether employees hold safety sensitive positions is whether the employees discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences. Skinner, 109 S.Ct. at 1419 (quoted in Knox County, 158 F.3d at 377). In Knox County, the court found that teachers held safety-sensitive positions as professionals to whom we entrust young children for a prolonged period of time on a daily basis. Knox County, 158 F.3d at 378. In addition, because the teachers' legitimate expectation of privacy is diminished by their participation in a heavily regulated industry and by the nature of their job, the public interest in suspicionless testing outweighs that private interest. Id. at 379.

In Bailey v. City of Baytown, Texas, 781 F.Supp. 1210 (S.D. Tex. 1991), the plaintiff was a licensed waste water operator at the City of Baytown's waste water treatment plant. In analyzing the city's alleged justification for requiring a drug search urinalysis, the court held that the "special needs" analysis of Skinner applied. Id. at 1214. The court stated that the plaintiff's place of employment (the city waste water treatment plant) and the interests of the City of Baytown fell within two of the categories expressly enumerated by the Court in Skinner. First, the city's interest involved the operation of a regulated industry and, secondly, the City's waste water treatment

5

employees worked in a government office where the safety of the employee, his or her coworkers, and the general public are the motivating concerns, not law enforcement. Id.

The Court finds that the "special needs" analysis of Skinner applies in this case. Plaintiff admits that he works in an industry subject to "a host of federal and state regulations." Docket No. 23, ¶ 2. Plaintiff disputes, however, whether his job is "safety-sensitive." Docket No. 23, ¶¶ 3, 7, 8; Docket No. 22, pp. 1-2, 4-8; Docket No. 1, ¶ 25. Plaintiff disagrees with Defendants as to the nature of Plaintiff's responsibilities with regard to safety. For example, Defendant Atchley has stated that the Utility District relies on its WTPOs, like Plaintiff, to make water safe for consumption by its customers. Docket No. 19-12, ¶ 4. Mr. Atchley claims that Plaintiff's position was a safety sensitive one, that he was responsible for testing and chemically treating untreated water, adhering to a host of state and federal regulatory guidelines, performing maintenance duties, training other WTPOs, accurately recording the chemical adjustments he made to the treated water, and at times handling dangerous and caustic chemicals. Id., ¶ 6.

Plaintiff, on the other hand, claims that there was no safety component to his job. Docket No. 22, p. 1. Plaintiff asserts that were numerous safeguards within the system to ensure that no improperly treated water would actually reach the public. Id. Plaintiff asserts that the chemicals he worked with were not dangerous and the extent of his work performed on machinery was not dangerous. Id., p. 2. Plaintiff disputes the assertion that others in the plant relied upon his records and his testing. Id.; see also Id., pp. 4-7.

Plaintiff's job was to make drinking water safe for human consumption. The "safeguards" relied upon by Plaintiff to say his job was not safety-sensitive are simply safeguards. The employee in Plaintiff's position "safeguarded" other WTPO employees. The Court finds that Plaintiff's job

6

as a WTPO was safety-sensitive. Under the Skinner analysis, Plaintiff's job was "fraught with such risks of injury to others that even a momentary lapse of attention could have disastrous consequences." Skinner, 109 S.Ct. at 1419.

The Court finds, weighing the competing private and public interests herein, that Defendants' drug search of the Plaintiff was reasonable. Plaintiff's expectation of privacy was diminished by reason of his participation in a highly regulated industry. In addition, Plaintiff worked in a position where the safety of the public was a motivating concern, not law enforcement. Accordingly, Defendants' Motion for Summary Judgment is GRANTED on Plaintiff's Fourth Amendment claims, and those claims are DISMISSED.

## DUE PROCESS

Plaintiff also alleges that the drug test administered to him illegally deprived him of his job without due process of law. Defendants claim Plaintiff had no property interest in continued employment and, therefore, was not entitled to due process.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. Board of Regents Of State Colleges v. Roth, 92 S.Ct. 2701, 2705 (1972). Government employees with a protectable property interest in their jobs are ordinarily entitled to pre-deprivation notice of the charges, an explanation of the employer's evidence, and an opportunity present their account of the events. Bailey v. Floyd County Bd. of Educ., 106 F.3d 135, 141 (6th Cir. 1997). Absent a property interest in his employment, however, Plaintiff was not entitled to any pre-deprivation process whatsoever. Id.

7

The existence of a property interest depends largely upon state law. Bailey, 106 F.3d at 141. A property interest exists and its boundaries are defined by rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Id. (citing Roth, 92 S.Ct. at 2709). Government employment amounts to a protected property interest when the employee has a legitimate expectation of continued employment. Curby v. Archon, 216 F.3d 549, 553 (6th Cir. 2000); Bailey, 106 F.3d at 141.

Tennessee has long recognized the doctrine of employment at will, with the mutual right of either party to terminate such a relationship with or without cause. Brown v. City of Niota, Tennessee, 214 F.3d 718, 721 (6th Cir. 2000). In fact, there is a presumption in Tennessee that an employee is an employee "at will." Rose v. Tipton County Public Works Dept., 953 S.W.2d 690, 691-92 (Tenn. Ct. App. 1997). Under Tennessee law, however, what would otherwise be an at-will contract may be modified by specific language which evidences an intent to modify the existent employment contract. Brown, 214 F.3d at 721.

In Reed v. Alamo Rent-A-Car, Inc., 4 S.W.3d 677, 688 (Tenn. Ct. App. 1999), the court held that an employee handbook could modify an at-will employment agreement to create a protectable property interest. The Reed court, however, limited its holding to those cases where the handbook contains "unequivocal language demonstrating [the employer's] intent to be bound by the handbook's provisions." Id. (quoted in Brown, 214 F.3d at 721). The Sixth Circuit has called the Reed standard "a high standard for establishing the existence of an employer's specific intent to be bound by the terms of an employee handbook." Brown, 214 F.3d at 721. In cases where Tennessee

8

courts have found an employment contract to exist, the employee handbook contained the mandatory terms "shall" and "will." Id.

In this case, Plaintiff relies upon a provision of the Utility District's Alcohol and Drug Abuse Policy which states: "The purpose of this policy is to assure worker fitness for duty and to protect our employees, customers and the public from the risks posed by the use of alcohol and drugs." See Docket No. 22, pp.8-9. Plaintiff claims that this provision indicates that the policy was intended, at least in part, to operate for the benefit of employees and, therefore, Plaintiff did have a property interest in his position with respect to violations of the alcohol and drug abuse policy. Id.

The Court disagrees and finds that the language of this alcohol and drug abuse policy does not evidence a clear intent to create a property interest in continued employment with the Utility District. In addition, as in Brown, Plaintiff here cannot establish a property interest in continued employment because nothing cited by Plaintiff provides a definite term of employment. The law is well established that a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause. Brown, 214 F.3d at 722.

For these reasons, the Court finds that Plaintiff did not have a protected property interest in continued employment with the Hendersonville Utility District. Plaintiff also asserts, however, that he had a liberty interest in his reputation, good name, honor and integrity which is protected by the Fourteenth Amendment and which entitles Plaintiff to a "name-clearing hearing" if he requests one. Docket No. 22, pp. 9-10.[2]

---

[2] Defendants assert this is a "new" theory of Plaintiff's, but the Court need not address that argument.

A person's reputation, good name, honor and integrity are among the liberty interests protected by the due process clause of the Fourteenth Amendment. Brown, 214 F.3d at 722. A deprivation of any of those interests must be accompanied by notice and an opportunity to be heard to refute any charges against that person. Id.

The Sixth Circuit has identified five elements that must be satisfied to establish that a plaintiff was deprived of a liberty interest entitling the plaintiff to a name-clearing hearing. Those elements are: (1) the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment; (2) the stigmatizing statements must not allege merely improper or inadequate performance, incompetence, neglect of duty or malfeasance; (3) the stigmatizing statements must be made public; (4) the plaintiff must claim that the charges made against him were false; and (5) the public dissemination must have been voluntary. Ludwig v. Board of Trustees of Ferris State University, 123 F.3d 404, 410 (6th Cir. 1997); Brown, 214 F.3d at 722-23.

Plaintiff's Complaint alleges that Defendants did not keep the results of Plaintiff's drug test confidential and allowed supervisors there to engage in wild and untrue recollections of Plaintiff's illicit drug use. Docket No. 1, ¶ 27. Plaintiff has provided no support for this allegation. In his Response, Plaintiff alleges, with no cite to the record, that "Mr. Asbridge and Mr. Bamberg informed Plaintiff's co-workers that he and several other employees had failed their drug test." Docket No. 22, p. 10. Plaintiff has no personal knowledge of these statements and was only "told" about them by others. See, e.g., Plaintiff's Deposition attached to Docket No. 26, p. 83.. The Court finds that Plaintiff has failed to produce admissible evidence of any stigmatizing public statements sufficient to survive summary judgment on the liberty interest claim. Accordingly, the Court need not reach Defendants' other arguments.

10

For these reasons, Defendants' Motion for Summary Judgment on Plaintiff's due process claims is GRANTED, and those claims are DISMISSED.

## BREACH OF CONTRACT

Having found that no employment contract existed between Plaintiff and the Utility District, the Court finds that Plaintiff's breach of contract claim should be dismissed.

## CONCLUSION

For all these reasons, Defendants' Motion for Summary Judgment (Docket No. 16) is GRANTED, and this action is DISMISSED. The pretrial conference set for April 17, 2006, and the trial set for April 25, 2006, are canceled.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE